**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARTIN F. WIESNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-1599 (RBW) |
| v. | ) |
| | ) |
| FEDERAL BUREAU OF | ) |
| INVESTIGATION, CENTRAL | ) |
| INTELLIGENCE AGENCY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

<u>**DEFENDANT FEDERAL BUREAU OF INVESTIGATION'S REPLY MEMORANDUM**</u>

Defendant, Federal Bureau of Investigation ("FBI"), respectfully replies to Plaintiff's

Opposition to Defendant FBI's Motion to Dismiss Or, in the Alternative, for Summary Judgment

(Document 22), filed in this action brought under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, as amended.[1] As set forth below, and in our moving papers, defendant conducted a

reasonable search of its records, located no responsive records, and therefore no records have been

---

[1] Defendant FBI attaches a Revised Declaration of David M. Hardy, which is incorporated by reference in our moving papers and this reply. The revised declaration replaces the original declaration, filed as part of defendant's moving papers, which was locked down on ECF by the Clerk, upon request of undersigned counsel, after a review of the filed document revealed that some personal identifier information had not been redacted from several of the exhibits. <u>See</u> FRCP 5.2 (Privacy Protection for Filings Made With Court). The privacy information has been redacted from the exhibits attached to the revised declaration in accordance with Rule 5.2. The revised declaration is otherwise substantially the same as the original declaration (with one exception), and the paragraphs referenced in our moving papers have not been changed (<u>see</u> Revised Declaration of David M. Hardy at n.1). The exception is that paragraph 22 of the original declaration has been revised to clarify an issue relating to the search conducted by defendant that was raised by plaintiff in his opposition brief.

improperly withheld from plaintiff.[2] Accordingly, the Court should grant defendant FBI's motion for summary judgment.

## ARGUMENT

This Court has jurisdiction in a FOIA action, such as this, only when an agency has improperly withheld agency records.  5 U.S.C. § 552(a)(4)(B).  "[I]t is well established that under the FOIA, 'once the records are produced the substance of the controversy disappears and becomes moot, since disclosure which the suit seeks has already been made.'"  Trueblood v. U.S. Dep't of Treasury, 943 F. Supp. 64, 67 (D.D.C. 1996) (quoting Crooker v. U.S. State Dep't, 628 F.2d 9, 10 (D.C. Cir. 1980)); see also Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982).  Furthermore, summary judgment is appropriate where the pleadings, together with the declaration, demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  Fed. R Civ. P. 56(c); Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).  The agency may carry its burden by relying on the declaration of a government official because courts normally accord a presumption of expertise in FOIA as long as the declaration is sufficiently clear and detailed and submitted in good faith.  See, e.g., Oglesby v. U.S. Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Hayden v. National Security Agency, 608 F.2d 1381, 1387 (D.C. Cir. 1979).  A court may therefore award summary judgment in a FOIA case solely on the basis of information provided by the department or agency affidavits or declarations.  See Hayden, 608 F.2d at 1387.

---

[2]  Defendant Central Intelligence Agency which, like the FBI, has no responsive records pertaining to plaintiff, filed an answer to the complaint, and is in the process of preparing a declaration in support of a motion to dismiss or, in the alternative, for summary judgment.

Here, summary judgment should be entered in favor of the FBI because plaintiff has failed to meet his burden of "contradicting the assertions" in Defendant's Statement of Material Issues as to Which There Is No Genuine Dispute ("SMINGD"). See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992), LCvR 7(h) and Fed. R. Civ. P. 56(e). Mere conclusory allegations are not enough to survive a motion for summary judgment. Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993); Rowland v. Riley, 5 F. Supp.2d 1, 3 (D.D.C. 1998); Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997). The FOIA confers jurisdiction upon the District Court to provide relief to a plaintiff only where requested documents have been "improperly withheld" by an agency. 5 U.S.C. § 552(a)(4)(B). The courts have interpreted this section of the statute to mean that jurisdiction only exists upon a showing by the plaintiff that the defendant (1) improperly (2) withheld (3) agency records. See Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136, 150 (1980).

"The plaintiff must show that the agency 'contravened all three components of this obligation' in order for jurisdiction to be valid." Kuffel v. U.S. Bureau of Prisons, 882 F. Supp. 1116, 1120 (D.D.C. 1995) (citing Kissinger, 445 U.S. at 151.) Absent such a showing, FOIA confers no "judicial authority to devise remedies and enjoin agencies." Defendant has proved that it conducted an adequate search and that it was responsive to plaintiff's request for any first-party records relating to him (SMINGD, ¶¶ 1-3).

In his revised declaration, David M. Hardy, Section Chief of the FBI's Record/Information Dissemination Section, explained that the FBI searches its Central Records System ("CRS") "for documents that are potentially responsive to FOIA and Privacy Act requests" using the "Automated Case Support System ("ACS") (Revised Hardy Decl., ¶ 10). The ACS allows the FBI to retrieve data using "General Indices" and search "main" and "reference" entries (id. at ¶ 12). A "main" entry

search will locate any records that carry "the name corresponding with a subject of a file contained in the CRS" and a "reference" entry (or "cross-reference") search will locate records containing "a mere mention or reference to an individual" that are "located in another 'main' file on a different subject matter" (id.).  The FBI also maintains indices of electronic surveillance activities conducted by the FBI, which are maintained in a separate system of records from CRS, and are referred to as ELSUR Index (id. at ¶¶ 16-17).

In response to plaintiff's February 9, 2006 FOIA request, the FBI conducted a "main" entry search of the CRS "using the name 'Martin Frederick Wiesner'" (which would locate records containing phonetic variations of the name), and also using plaintiff's personal identifier information (date of birth and social security number), in an attempt to locate any main investigatory files at the FBI Headquarters ("FBIHQ"), and found no responsive records (Revised Hardy Decl. at ¶ 21 and Exh. A).  The FBI also conducted a "cross-reference" search of records located at FBIHQ using plaintiff's name and other personal identifier information, even though plaintiff did not specifically make a request for a cross-reference search in his FOIA request (id. at ¶ 22).  The FBI also conducted a search of the ELSUR Index at FBIHQ, and found no records concerning plaintiff (id.). Mr. Hardy further explained that plaintiff's request, made in the appeal letter to OIP, dated April 13, 2006, suggesting that the FBI conduct a search of FBI records using search terms "pertaining to Mr. Wiesner," such as "the website: www.dogsonacid.com aka "DOA," would not locate any additional records responsive to "plaintiff's request for records on himself" (see id. at ¶ 22).[3]

---

[3] The April 20, 2006 appeal letter described plaintiff's FOIA request as seeking "records in the custody [of the FBI] indexed or cross-referenced under the name "Martin Wiesner" (see Revised Hardy Decl., Exh.C).

Accordingly, plaintiff has not been denied records due to any fraud, error or bad faith. Nor has plaintiff shown otherwise. Plaintiff did not include as part of his opposition brief a "separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue to be litigated," as required by LCvR 56.1. Instead, plaintiff included a paragraph in the text of his opposition brief entitled "A Genuine Issue of Material Fact," which set forth the disputed issue in this case as "not the existence of any particular document, but rather the reasonableness of the agency's search (see Pl's Opp'n Br. at unnumbered p.4). Plaintiff appears to contest the reasonableness of the search conducted in this case on the ground that the agency has acted in "bad faith" by not fulfilling an alleged obligation to provide an "accounting of a search for cross-reference files (CRS), when the search was performed, under what circumstances, and what subject matter was included in the search" (see id. at unnumbered p.6).

Specifically, plaintiff contends that an "accounting" is required based on a one-party consent recorded telephone conversation he had with Ms. Lopes, an official of the FBI's FOIA Department, on August 9, 2007, which he alleges somehow contradicted assertions made in Defendant FBI's Statement of Material Issues as to Which There Is No Genuine Dispute. The conversation took place after the U.S. Department of Justice, Office of Information and Privacy ("OIP"), sent a letter, dated June 25, 2007, to plaintiff's attorney, Paul Wolf, Esquire, which stated, in pertinent part, the following:

> After carefully considering your appeal, I am affirming the FBI's action. The FBI informed you that it could locate no records responsive to your client's request in its automated databases. I have determined that the FBI's response was correct.
>
> As a courtesy to you, the FBI conducted a search of its Electronic Surveillance ("ELSUR") database and could locate no records responsive to your client's request.
>
> Regarding the portion of your appeal letter asking the FBI to conduct a search of the

field office "covering Mr. Wiesner's address [], I suggest that if you have not done so already, that your client submit a request to the Washington Metropolitan Field Office. See 16 C.F.R. §§16.3(a), 16.41(a) (2006) (requests for records held by the FBI field offices must be submitted to the field offices directly).

See Revised Hardy Decl., Exh. E; Compl., ¶ 10 ("By form of letter to attorney to plaintiff, dated June 27, 2007 (sic), FBI denied plaintiff's appeal, after affirming FBI's initial finding of no records responsive in its automated databases."). Contrary to plaintiff's assertion, his conversation with Ms. Lopes simply affirmed that the FBI conducted a reasonable search for records contained in main and reference files maintained at its headquarters, and was unable to find any responsive records.[4] Accordingly, nothing in the transcription contradicts any of the assertions in defendant FBI's moving papers.

---

[4] Plaintiff attached a rough transcription of the conversation as Exhibit I to his opposition brief. At the outset of the call (at p.1), Ms. Lopes clearly explained to plaintiff that the following events took place prior to the issuance of the appeal letter:

[The appeal attorney] advised us to do another search, OK, she said conduct another search for all main files and cross-referenced files at headquarters and any field office-"if records are located, then direct them to me", OK. So, we did another search–was done, there was no record of any main files or reference files found, and this search covers the headquarters and all our field offices-so that's why they . . affirmed our decisions saying we don't have any records-for you. That's why a decision was affirmed-did you ever receive your letter from the Department of Justice?

By citing plaintiff's rough transcription, defendant by no means concedes that it is accurate or that the recorded phone conversation is otherwise competent evidence that would be considered admissible evidence under the Federal Rules of Evidence. Rather, we cite the transcription because it contains no statements "contradicting the assertions" in Defendant's Statement of Material Issues as to Which There Is No Genuine Dispute. See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992), LCvR 7(h) and Fed. R. Civ. P. 56(e).

Finally, in his opposition brief, plaintiff limits his request for fees and costs to "$0.01'" (see Pl's Opp'n Br. at unnumbered p.14).  As we stated in our moving papers, "[t]he Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section [5 U.S.C. § 552] in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E).  Such relief is, however, not available to the plaintiff.  See Oil, Chemical & Atomic Workers Int'l Union v. Dep't of Energy, 288 F.3d 452, 456-57 (D.C. Cir. 2002)("[I]n order for plaintiffs in FOIA actions to become eligible for an award of attorney's fees, they must have 'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree.") (citing Buckhannon Bd. & Care Home v. West Virginia Dep't of Health & Human Resources, 532 U.S. 598, 603 (2001)); see also Kay v. Ehrler, 499 U.S. 432, 434-35 & n.4 (1991) (5 U.S.C. § 552(a)(4)(E) does not authorize the award of fees to a pro se non-attorney plaintiff); Benavides v. Bureau of Prisons, 993 F.2d 257, 259 (D.C. Cir. 1993) (reversing contrary rule in light of Kay).[5]  Plaintiff has secured no relief from the Court and is proceeding pro se.  Consequently, Defendant respectfully submits that the only case or controversy remaining in this action is Plaintiff's asserted claim for costs which must be dismissed.

## CONCLUSION

WHEREFORE, for the foregoing reasons, and those stated in the Federal Bureau of Investigation's moving papers, the Court should dismiss this case or, in the alternative, enter

---

[5]  The authority cited by plaintiff in his opposition brief (at unnumbered p.14) for the proposition that fees may be awarded to pro se non-attorney plaintiffs pre-date the Benavides decision, and therefore are no longer good law.

judgment in favor of the FBI.

Respectfully submitted,


_____/s/_____

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____/s/_____

RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____/s/_____

JOHN G. INTERRANTE, PA Bar #61373
Assistant United States Attorney
Civil Division, Room E-4806
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7220
(202) 514-8780 (fax)
John.Interrante@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 4th day of March, 2008, a copy of the foregoing reply

brief  and revised declaration (and exhibits) was served by First-Class mail, postage prepaid, to:


MARTIN F. WIESNER
1622 N. McKinley Rd. # 5
Arlington, VA 22205


     /s/
JOHN G. INTERRANTE
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARTIN F. WIESNER,                          )
                                            )
            Plaintiff,                      )
                                            )
            v.                              )      Civil Action No. 07-CV-1599
                                            )
FEDERAL BUREAU OF INVESTIGATION, et al.     )
                                            )
            Defendants.                     )
                                            )

## REVISED DECLARATION OF DAVID M. HARDY[1]

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), at the Federal Bureau of Investigation,

Headquarters Office ("FBIHQ") in Washington, D.C. I have held this position since August 1,

2002. Prior to joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge

Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom

of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From

October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and

routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law

in the State of Texas since 1980.

(2)     In my current capacity as Section Chief of RIDS, I supervise approximately 208

employees who staff a total of ten (10) FBIHQ units and a field operational service center unit

---

[1] This Declaration contains substantially the same contents as the declaration submitted to court on December 21, 2007, with the exception of ¶ 22 infra, which includes additional information regarding the search for records responsive to plaintiff's request.

whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and other Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the handling of the FOIA/Privacy Act of plaintiff, Martin F. Wiesner, who seeks access to records pertaining to himself.

(4)    I have reviewed "Plaintiff's Opposition to Defendants' Motion to Dismiss or for Summary Judgement" ("Opposition") filed on January 9, 2008. This declaration is submitted to address the issue raised in plaintiff's Opposition defining the FBI's search as inadequate regarding his request for records on himself. This declaration supplements and further clarifies my previous declaration submitted in this case in support of the FBI's Motion for Summary Judgement, Declaration of David M. Hardy, dated December 21, 2007 ("Hardy Declaration"). The Hardy Declaration was submitted in order to provide the Court and the plaintiff with an explanation of the procedures used to search for records responsive to plaintiff's request, and to discuss the results of the search efforts, which yielded no responsive records.

-2-

**CORRESPONDENCE RELATED TO PLAINTIFF'S REQUEST**

(5)    By letter dated February 9, 2006, plaintiff submitted a request to FBIHQ seeking disclosure of all data maintained by the FBI that pertained to himself. **(See Exhibit A.)**

(6)    By letter dated February 28, 2006, FBIHQ advised plaintiff that a search of the automated indices to the Central Records System ("CRS") files at FBIHQ located no records responsive to his February 9, 2006 FOIA/Privacy Act request, which was assigned FOIPA number 1039072-000. Plaintiff was further advised that he could appeal the FBI's "no record" response by writing to the Department of Justice ('DOJ") Office of Information and Privacy ("OIP") within sixty (60) days from date of letter. **(See Exhibit B.)**

(7)    By letter dated April 13, 2006, plaintiff's counsel appealed the FBI's "no record" response to DOJ OIP. Counsel attached a Privacy Waiver and Certification of Identity Form completed by plaintiff on April 7, 2006, authorizing release of information to counsel. **(See Exhibit C.)**

(8)    By letter dated April 28, 2006, OIP acknowledged receipt of plaintiff's appeal and assigned it appeal number 06-1837. Plaintiff was advised by OIP that he would be notified of the decision at a later date. **(See Exhibit D.)**

(9)    By letter dated June 25, 2007, OIP responded to the appeal filed by plaintiff's counsel. OIP advised plaintiff's counsel that after carefully considering his appeal, it was affirming the FBI's action on his client's request. OIP further advised counsel that, as a courtesy, the FBI conducted a search of its Electronic Surveillance (ELSUR) indices and located no records responsive to his client's request. In addition, OIP suggested to counsel that his client submit a new request directly to the Washington Field Office since plaintiff's request letter asked the FBI

to conduct a search of the field office covering his residence in Arlington, Virginia. OIP provided

the address of the Washington Field Office to plaintiff's counsel and explained that requests for

records held by FBI field offices must be submitted directly to the field offices, citing 28 C.F.R.

§§ 16.3(a) & 16.41(a) 2006. OIP advised that he could appeal any future adverse determinations

made by the FBI and that if counsel's client was dissatisfied with this decision, OIP advised that

he had a right to seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B). **(See Exhibit**

**E.)**

### EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

(10)    The Central Records System ("CRS") enables the FBI to maintain information

which it has acquired in the course of fulfilling its mandated law enforcement responsibilities.

The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and

other files compiled for law enforcement purposes. CRS is organized into a numerical sequence

of files called FBI "classifications," which are broken down according to subject matter. The

subject matter of a file may correspond to an individual, organization, company, publication,

activity, or foreign intelligence matter (or program). Certain records in the CRS are maintained at

FBIHQ, whereas records that are pertinent to specific field offices of the FBI are maintained in

those field offices. While the CRS is primarily designed to serve as an investigative tool, the FBI

searches the CRS for documents that are potentially responsive to FOIA and Privacy Act requests.

The mechanism that the FBI uses to search the CRS is the Automated Case Support System

("ACS").

(11)    The ACS was implemented for all Field Offices, Legal Attaches ("Legats"), and

FBIHQ in order to consolidate portions of the CRS that were previously automated. ACS can be

described as an internal computerized subsystem of the CRS. Because the CRS cannot electronically query the case files for data, such as an individual's name or social security number, the required information is duplicated and moved to the ACS so that it can be searched. More than 105 million records from the CRS were converted from automated systems previously utilized by the FBI. Automation did not change the CRS; instead, automation has facilitated more economic and expeditious access to records maintained in the CRS.

(12)    The retrieval of data from the CRS is made possible through the ACS using the General Indices, which are arranged in alphabetical order.[2] The entries in the General Indices fall into two categories:

> (a) A "main" entry -- A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.

> (b) A "reference" entry --"Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

(13)    Searches made in the General Indices to locate records concerning a particular subject, such as Martin Frederick Wiesner, are made by searching the subject requested in the index.

(14)    The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

---

[2] The General Indices are not only automated but also include index cards which allow a manual search for records that pre-dated the implementation of ACS on October 16, 1995.

(a) Investigative Case Management ("ICM") – ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads. The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a case. The field offices that receive leads from the OO are referred to as Lead Offices ("LOs"). When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is used by all FBIHQ, as well as all FBI field offices and Legats that are conducting or assisting in the investigation. Using a fictitious file number "12-HQ-1234" as an example, an explanation of the UCFN is as follows: "12" indicates the classification for the specific type of investigation, which in this fictitious case denotes a "Drug" investigation; "HQ" is the abbreviated form used for the OO of the investigation, which here is FBIHQ and "1234" denotes the individual case file number for the particular investigation.

(b) Electronic Case File ("ECF") – ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept in that only the creator of a document serializes it into a file. This provides a single-source entry of serials into the computerized ECF system. All original serials are maintained in the OO case file.

(c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an index of approximately 100.4 million records, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event.

(15) The decision to index names other than subjects, suspects, and victims is a discretionary

-6-

decision made by the investigative FBI Special Agent ("SA") assigned to work on the investigation, the supervisor in the field office conducting the investigation, and the supervising SA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, i.e., Martin Frederick Wiesner.

### ELECTRONIC SURVEILLANCE ("ELSUR") INDICES

(16)    The ELSUR indices are used to maintain information on a subject whose electronic and/or voice communications have been intercepted as the result of a consensual electronic surveillance or a court-ordered (and/or sought) electronic surveillance conducted by the FBI. The ELSUR indices date back to January 1, 1960. On or about October 9, 1991, the ELSUR indices were automated. Since that time, FBIHQ and all FBI field offices have electronically generated, maintained, modified and accessed all ELSUR records.

(17)    The ELSUR indices are a separate system of records from the CRS which, prior to automation, consisted of index cards on individuals who had been the subject of a microphone or telephone surveillance by the FBI from 1960. As stated above, the previous manual index card system was converted to an automated system on or about October 9, 1991. These indices include individuals who were the (a) targets of direct surveillance, (b) participants in monitored

-7-

conversations, and (c) owners, leasers, or licensors of the premises where the FBI conducted electronic surveillance. In addition to the names of individuals in the above categories, the cards in the ELSUR index contain the date the voice was monitored, a source number to identify the individual on whom the surveillance was installed, and the location of the FBI field office that conducted the monitoring.

(18)    The ELSUR indices are published as a separate records system in the Federal Register because not all names contained in the ELSUR index can be retrieved through the General Index and CRS. See 52 Fed. Reg. 8482 (1992).

(19)    The FBI field offices that have conducted electronic surveillance at any time from 1960 to the present also maintain ELSUR indices. Since January 1, 1960, the field offices have been including in their ELSUR indices – and reporting to FBIHQ for inclusion in its index – the names of all persons whose voices have been monitored through an FBI microphone installation or a telephone surveillance. The names of monitored subjects are retrievable through the FBIHQ or local field office ELSUR indices.

(20)    Until 1969, FBI field offices were also required to forward the names of all persons mentioned during monitored conversations to FBIHQ for inclusion in the FBIHQ ELSUR index.

## SEARCHES FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUEST

(21)    In response to plaintiff's request for information concerning himself, the FBI searched the CRS using plaintiff's name in order to locate any main investigatory files maintained at FBIHQ. A search of the CRS was conducted using the name "Martin Frederick Wiesner," which

search covered a phonetic breakdown of the name. For example, this search would locate records using the phonetic sounds of each last, first, and middle name relating to the following names: "Wiesner, Martin F.," "Wiesner, Martin," "Wiesner, M. F.," "Wiesner, Martin Frederick," "Wiesner, M. Frederick," and "Wiesner, Frederick." The FBI also used plaintiff's date of birth and Social Security Number to facilitate the identification of responsive records. This search failed to locate any main investigatory files responsive to plaintiff's request.

(22)    In the absence of a specific request for a search of "cross-references" at the administrative level, the FBI's current policy is to search for and identify only "main" files responsive to FOIA/Privacy Act requests. In this case, plaintiff did not specifically request that a search be conducted for cross-references. However, upon further review, the FBI conducted a search of the CRS for main files and cross-references potentially responsive to plaintiff's request and located no responsive main files or cross-references at FBIHQ. In addition, the ELSUR Index at FBIHQ was searched for any ELSUR records concerning plaintiff with negative results. Furthermore, plaintiff's appeal letter dated April 13, 2006 to OIP, stated that:

> [T]he FBI should use the following leads and information to search for FBI records pertaining to Mr. Weisner: the website: www.dogsonacid.com aka "DOA"; persons using aliases (account names on this website, including aliases "Telavasquez", "Benedict Arnold", "Suicide Bomba", and "E.O.P."; opposition to the invasion of Iraq, the impeachment of President Bush, methods and materials used for "suicide bombings", and the D.C. area sniper shootings of 2002.

When the FBI conducted a search of the CRS using plaintiff's name, date of birth, and Social Security number, any main files or cross-references that were responsive to plaintiff's request for records on himself would have been located. Using the additional terms provided by plaintiff in his appeal letter would not locate additional records responsive to the plaintiff's request. If the FBI had located any

potentially responsive records, the terms provided in the appeal letter would have merely allowed the FBI to determine whether the records were actually responsive to plaintiff's request. The FBI has searched all locations likely to yield documents responsive to plaintiff's request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this __27th__ day of February, 2008.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
 Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

-10-

MARTIN F. WIESNER,                          )
                                            )
          Plaintiff                         )
                                            ) Civil Action No. 07-CV-1599
          v.                                )
                                            )
FEDERAL BUREAU OF INVESTIGATION, et al. )
                                            )
          Defendants.                       )
                                            )

# EXHIBIT A

NRRTS
NRAES

**Date:**    02/09/06

**To:**    David M. Hardy, Chief
Record Information/Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
935 Pennsylvania Avenue, N.W.
Washington, D.C. 20535-0001

**From:**    Martin Frederick Wiesner

**RE:**    FOIPA request

Dear Mr. Hardy,

This letter constitutes my formal request for information pursuant to the provisions of the Freedom of Information Act, 5 U.S.C. section 552 and the Privacy Act, 5 U.S.C. section 552a. I request copies of all data maintained by your agency that pertain to me as described below:

Martin Frederick Wiesner
1622 N. McKinley Road #5        I have only been at this address since 02/01/06. Any
Arlington, VA                   data you may have will most likely include my first
22205                           former address (5618 Dover Ct. Alexandria, VA 22312)

Social Security Number:        9912
Date and Place of Birth: 02/02/  Washington D.C. (Georgetown)
Former Addresses:   1.                      2.
                    5618 Dover Ct.          3938 Lincolnshire St.
                    Alexandria, VA          Annandale, VA
                    22312                   22003

If you deny all or any part of this request, please cite each specific exemption that forms the basis of your refusal to release the information and notify me of appeal procedures available under the law. If you have any questions about handling this request, you may telephone me at (703) 909-7771. Thank you.

Sincerely,

Martin Frederick Wiesner

Date: 02/09/06    Signature:

I, Mike R Holloman a Notary Public in and for the county and state of
Virginia hereby certify that on the 9th day of Feb, 2006, before me
personally appeared Martin F. Wiesner, who is known by me to be the identical person
whose name is subscribed to, and who signed and executed the foregoing instrument. In witness
thereof, I have hereunto set my hand and official seal this day and year above.

COM EXP DATE:
My commission expires: 3/31/06    Signature of Notary:

Exhibit A

MARTIN F. WIESNER,                          )
                                            )
            Plaintiff                       )
                                            ) Civil Action No. 07-CV-1599
            v.                              )
                                            )
FEDERAL BUREAU OF INVESTIGATION, et al. )
                                            )
            Defendants.                     )
                                            )



# EXHIBIT B



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

*February 28, 2006*

MR MARTIN FREDERICK WIESNER
APARTMENT 5
1622 NORTH MCKINLEY ROAD
ARLINGTON, VA 22205

Request No.: 1039072- 000
Subject: WIESNER, MARTIN FREDERICK

Dear Mr. Wiesner:

This is in response to your Freedom of Information-Privacy Acts (FOIPA) request noted above.

A search of the automated indices to our central records system files at FBI Headquarters located no records responsive to your FOIPA request.

Although no records responsive to your FOIPA request were located, we are required to inform you that you are entitled to file an administrative appeal if you so desire. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U. S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D. C. 20530-0001, within 60 days from the date of this letter. The envelope and the letter should be clearly marked "Information Appeal." Please cite the FOIPA request number assigned to your request so that it may easily be identified.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
    Dissemination Section
Records Management Division

*Exhibit B*

MARTIN F. WIESNER,                          )
                                            )
         Plaintiff                          )
                                            )  Civil Action No. 07-CV-1599
             v.                             )
                                            )
FEDERAL BUREAU OF INVESTIGATION, et al. )
                                            )
         Defendants.                        )
                                            )

# EXHIBIT C

06-1837



# PAUL WOLF

### ATTORNEY AT LAW

PO Box 11244, Washington, D.C. 20008-1244
Tel. (202) 674-9653, Fax. (202) 364-6188

April 13, 2006

OFFICE OF INFORMATION
AND PRIVACY

Co-Director, Office of Information and Privacy
US Department of Justice
1425 New York Avenue, NW  Suite 11050
Washington, DC 20530-0001

APR 2 0 2006

# RECEIVED

**Re: FOIA Request No. 1039072-000**

This is an appeal under the Freedom of Information and Privacy Acts for records in the custody of your agency indexed or cross-referenced under the name "Martin Wiesner." I am representing Mr. Wiesner in this matter. A notarized privacy waiver is attached, on the FBI form.

The FBI's response does not demonstrate that the FBI has done an adequate search for responsive records. The response states only that the FBI's central index at FBI headquarters was searched. It does not state what search terms were used, or whether files of the FBI's regional field office covering Mr. Wiesner's residence in Arlington, VA were searched. The FBI should search for all logical buildups, breakdowns and varations of Mr. Wiesner's name, in every index of records dating back to 1990, which may reasonably uncover relevant documents.

The FBI should also use the following leads and information to search for FBI records pertaining to Mr. Wiesner: the website: www.dogsonacid.com aka "DOA"; persons using aliases (account names) on this website, including aliases "Telavasquez", "Benedict Arnold", "Suicide Bomba", and "E.O.P."; opposition to the invasion of Iraq, the impeachment of President Bush, methods and materials used for "suicide bombings", and the D.C. area sniper shootings of 2002.

Mr. Wiesner cannot possibly be expected to know every indexing system used by the FBI, but the FBI should not only search it's main index, but also for files indexed other ways, such as "see references," numbered and lettered sub files, "DO NOT FILE" files, control files, and ELSUR (electronic surveillance) files  Mr. Weisner would also like copies of the indexing materials themselves; ie, "see reference" cards, abstracts, search slips, including search slips used to process this request, file covers, multiple copies of the same documents if they appear in a file, and tapes or videos of any electronic surveillances. The fact that the search slip used to process this request was not

*Exhibit C pg 1 of 4*

released to Mr. Wiesner is proof that the FBI has withheld material that should be released.

The law of this Circuit requires that the FBI conduct a search reasonably calculated to uncover all relevant documents. Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C.Cir.1990). The fundamental issue is "whether the search for those documents was adequate." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C.Cir.1984)

The burden is on the FBI to both conduct an adequate search, and to demonstrate its adequacy. The FBI must provide a level of detail "set[ting] forth the search terms and the type of search performed, and aver[ring] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. United States Dep't of Army, 920 F.2d 57, 68 (D.C.Cir.1990). The FBI has done neither.

If this appeal is denied, and suit is filed, the FBI cannot prevail in the position it has taken. Where an agency's description of its search is conclusory, or the record raises serious doubts as to the completeness of the agency's search, or there is evidence of agency bad faith, summary judgment for the government based on affidavits alone is inappropriate. Perry v. Block, 684 F.2d 121 (D.C. Cir., 1982) Agency affidavits regarding a search for responsive records are inadequate to support summary judgment where they "do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized." Weisberg v. USDOJ, 627 F.2d 365, 371 (D.C.Cir., 1980) Because FOIA cases are decided[1] in summary judgment, the FBI will not prevail in court without demonstrating the adequacy of its search in an affidavit. The FBI should make this showing at the administrative level, rather than forcing Mr. Wiesner to sue in court.

Furthermore, Mr. Wiesner may be entitled to discovery to ascertain the nature and scope of the search undertaken by the agency. Neugent v. Dept of Interior, 640 F.2d 386 (D.C. Cir., 1981); Founding Church of Scientology of Washington v. NSA, 610 F.2d 824 (D.C. Cir., 1979); Weisberg v. DOJ, 543 F.2d 308 (D.C. Cir., 1976). This expensive and time-consuming process could be avoided if the FBI were more forthcoming about the details of its search.

If this appeal is denied, Mr. Wiesner's only remedy will be the expensive route of litigation. The expenses incurred by Mr. Wiesner, the FBI, and the Court can be avoided by granting this administrative appeal. Otherwise, if Mr. Wiesner is forced to sue in court, he will most certainly try to recover attorney's fees from the FBI. I am confident that the court would find the FBI's response to be inadequate, and that Mr. Wiesner would substantially prevail.

Mr. Wiesner requests a waiver of all search and reproduction fees in connection with this request. Search fees do not apply to requests made under the Privacy Act. § 552a (f)(5). Regarding copying fees, the request is in the public interest and is not in Mr. Wiesner's commercial interest. It concerns the operations and activities of your agency;

Exhibit C, pg 2 of 4

namely, surveillance of American citizens.  Release of this information will significantly
increase public understanding of how your agency operates.

Respectfully submitted,

Paul Wolf
DC Bar #480285

Exhibit C pg 3 of 4



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

# Privacy Waiver and Certification of Identity

Full Name: _MARTIN F. WIESNER_

Aliases used: _____

Current Address: _1622 N. McKINLEY RD #5_
_ARLINGTON VA 22205_

Date of Birth: _02/84_    Place of Birth: _WASHINGTON D.C. (GEORGETOWN)_

Social Security Number (optional): _9912_

(Optional: Prior addresses, employments, etc., which may assist the FBI in locating the requested information)
_5618 DOVER CT. ALEX. VA 22312_
_3938 LINCONSHIRE ST. ANNANDALE VA 22003_

          I hereby waive my right to privacy, and I authorize the FBI to release any and all  Information relating
to me to :

                    (Name, address & phone of attorney or other designee)

                    _PAUL WOLF_
                    _PO BOX 11244_
                    _WASHINGTON DC 20008-1244_
                    _(202) 674-9653_

          Under penalty of perjury, I hereby declare that I am the person described above and understand that any
falsification of this statement is punishable under the provisions of Title 18, United States Code (U.S.C.), Section 1001
by a fine of not more than $10,000 or by imprisonment of not more than five years, or both; and that requesting or
obtaining any record(s) under false pretenses is punishable under the provisions of Title 5, U.S.C., Section 552a (i)(3)
as a misdemeanor and by a fine of not more than $5,000.

Signature: _____    Date: _9/07/06_

_County   Arlington_
_State    Virginia, 2006_

_MARTIN F. WIESNER appeared before me and showed D.L. as_
_proof of I.D. on this date April 7, 2006_
_____   my commission expires_
_NOTARY_            _4-30-2007_

_Exhibit C pg 4 OF 4_

MARTIN F. WIESNER,                          )
                                            )
        Plaintiff                           )
                                            )    Civil Action No. 07-CV-1599
        v.                                  )
                                            )
FEDERAL BUREAU OF INVESTIGATION, et al. )
                                            )
        Defendants.                         )
                                            )

# EXHIBIT D



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

APR 28 2006

Paul Wolf, Esq.
P.O. Box 11244                                   4-28-06
Washington, DC 20008-1244

Re:  Request No. 1039072 - Martin Wiesner

Dear Mr. Wolf:

This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation was received by this Office on April 20, 2006.

The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours.  In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt.  Your appeal has been assigned number **06-1837**.  Please mention this number in any future correspondence to this Office regarding this matter.

We will notify you of the decision on your appeal as soon as we can.  We regret the necessity of this delay and appreciate your continued patience.

Sincerely,

Priscilla Jones
Chief, Administrative Staff

FBI                                              *Exhibit D*

MARTIN F. WIESNER,                          )
                                            )
             Plaintiff                      )
                                            )  Civil Action No. 07-CV-1599
       v.                                   )
                                            )
FEDERAL BUREAU OF INVESTIGATION, et al. )
                                            )
             Defendants.                    )

# EXHIBIT E

 

**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

**JUN 2 5 2007**

Paul Wolf, Esq.                          Re:    Appeal No. 06-1837
Post Office Box 11244                            Request No. 1039072
Washington, DC 20008-1244                        ADW:JHA

Dear Mr. Wolf:

You appealed on behalf of your client, Martin Wiesner, from the action of the Headquarters Office of the Federal Bureau of Investigation on his request for access to records pertaining to himself. I regret the delay in responding to your appeal.

After carefully considering your appeal, I am affirming the FBI's action on your client's request. The FBI informed you that it could locate no records responsive to your client's request in its automated indices. I have determined that the FBI's response was correct.

As a courtesy to you, the FBI conducted a search of its Electronic Surveillance (ELSUR) database and could locate no records responsive to your client's request.

Regarding the portion of your appeal letter asking the FBI to conduct a search of the field office "covering Mr. Wiesner's residence in Arlington, Virginia," I suggest, if you have not done so already, that your client submit a new request directly to the Washington Metropolitan Field Office. See 28 C.F.R. §§ 16.3(a), 16.41(a) (2006) (requests for records held by the FBI field offices must be submitted to the field offices directly). You may appeal any future adverse determination made by the FBI. The address for the Washington Metropolitan Field Office is:

Federal Bureau of Investigation
Washington Metropolitan Field Office
601 4th Street, NW
Washington, DC 20535-0002

If your client is dissatisfied with my action on your appeal, he may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,



Associate Director



Exhibit E