**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————
                                            )
MARTIN F. WIESNER,                          )
                                            )
                        Plaintiff,          )
                                            )
            v.                              )       Civil Action No. 07-1599  (RBW)
                                            )
FEDERAL BUREAU                              )
OF INVESTIGATION and                        )
CENTRAL INTELLIGENCE AGENCY,                )
                                            )
                        Defendants.         )
———————————————————————)

**MEMORANDUM OPINION**

Martin F. Wiesner, the <u>pro se</u> plaintiff in this civil lawsuit, seeks "the disclosure and

release of agency records" allegedly withheld by the Federal Bureau of Investigation (the "FBI")

and the Central Intelligence Agency pursuant to the Freedom of Information Act, 5 U.S.C. § 552

(2001) (the "FOIA"). Complaint ¶ 1.  On February 21, 2008, the FBI filed a motion to dismiss

the plaintiff's complaint against it pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6) or for summary judgment pursuant to Federal Rule of Civil Procedure 56.  After

carefully considering the plaintiff's complaint, the FBI's motion, and all memoranda of law and

exhibits relating to that motion,[1] the Court concludes for the reasons that follow that it must grant

the motion in part and deny without prejudice the remainder of the motion for the reasons that

follow.

———————————————————————

[1]  In addition to the plaintiff's complaint and the FBI's motion to dismiss or for summary judgment, the Court
considered the following documents in rendering its decision: (1) the Memorandum of Points and Authorities in
Support of Defendant Federal Bureau of Investigation's Motion to Dismiss or, in the Alternative, for Summary
Judgment (the "FBI's Mem."), (2) Defendant Federal Bureau of Investigation's Statement of Material Facts As to
Which There Is No Genuine Dispute (the "FBI's Facts"), (3) the Opposition to Defendant Federal Bureau of
Investigation's Motion to Dismiss or, in the Alternative, for Summary Judgment (the "Pl.'s Opp'n"), (5) the
Defendant Federal Bureau of Investigation's Reply Memorandum (the "FBI's Reply"), and (6) the Statement of
Material Facts As to Which It Is Contended There Is a Genuine Issue to Be Litigated (the "Pl.'s Facts").

## I.   Background

The basic facts of this case are uncontested.[2]  "By letter dated February 9, 2006," the

plaintiff "made a request" under FOIA "for all FBI files maintained about him."  FBI's Facts ¶ 1.

The FBI searched "all" of its locations "likely to have records responsive" to that request,

"including its Central Records System ('CRS') and Electronic Surveillance Indices ('ELSUR')."

Id. ¶ 2.  "The FBI was able to identify no responsive records in its possession," id., and notified

the plaintiff of that fact in "letters dated February 28, 2006, and June 25, 2007," id. ¶ 3.

The plaintiff filed his complaint in this Court on September 7, 2007.  In his complaint,

the plaintiff alleges that his FOIA request "stem[s] from [his] involvement on a website, dating

from September 21, 2002, where he discussed materials and methods used in suicide bombings,

opposition to military action in Iraq, the impeachment of President Bush, and the 2002 [District

of Columbia-]area sniper shootings."  Compl. ¶ 6.  The plaintiff further alleges that after

receiving the February 28, 2006 letter from the FBI, his "attorney . . . appealed the FBI's

response, citing all available information necessary to locate [the] plaintiff's records, including

[the] name of the website [described above], all aliases used by [the] plaintiff to communicate on

the website, and [the] specific topics of conversation [described above]."  Id. ¶ 8.  According to

the plaintiff, his attorney also "indicated that the FBI should not only search [its] main index, but

also . . . all files indexed in other ways," and requested "copies of the indexing materials

themselves" as proof that the searches took place.  Id.

---

[2]  The plaintiff did not initially file a statement of material facts in genuine dispute as required by this Court's local
rules.  See Local Civ. R. 7(h) (stating that a party's opposition to a motion for summary judgment "shall be
accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is
contended there exists a genuine issue to be litigated, which shall include references to the parts of the record relied
on to support the statement.").  After some prompting by the Court, the defendant submitted a statement in which he
asserts that he "is unable to file any statement" disputing the facts as asserted by the FBI "[d]ue to the exceedingly
evasive nature of the [d]efendant's memoranda, statements, and affidavits."  Pl.'s Facts at 1.  The Court therefore
treats the FBI's asserted facts as undisputed for purposes of its motion to dismiss or for summary judgment.

The plaintiff also alleges that, after receiving the June 27, 2007 letter from the FBI denying his appeal, he spoke with FBI Special Agent Debbie Lopes by telephone on August 9, 2007, who informed him that "all FBI field offices had been searched upon [the] initial review of [the plaintiff's] appeal," and that "it was this search[] which prompted the . . . denial of [his] appeal." Id. ¶ 11. Lopes allegedly "contradicted her own statement" a few moments later, "declar[ing] that the appeal file showed [that] the search of all FBI field offices had actually only taken place in July of 2007, after a previous telephone conversation between [the] plaintiff and [Lopes]." Id. After the plaintiff allegedly "referenced that previous conversation," Lopes purportedly "again contradict[ed] her statement of a few seconds earlier, . . . explaining that as a matter of procedure[] all field office and cross-referenced files were searched in response to [the] plaintiff's appeal." Id. When the plaintiff "attempted to verify if all relevant information cited in [his] appeal letter had been searched in conjunction with [his] name," Lopes allegedly "informed [the] plaintiff that she needed to consult with [the] FBI's appeal attorney" and ended the call. Id.

Based on these allegations, the plaintiff raises two claims against the FBI. First, he claims that the alleged inconsistencies in the representations made by Lopes in her August 9, 2007 telephone conversation with the plaintiff indicate bad faith on the part of the FBI. Id. ¶¶ 16-21. Second, he claims that the FBI's search was inadequate on its face. Id. ¶¶ 22-24. He therefore requests, inter alia, that the Court "[o]rder [the] FBI to produce a definitive and truthful record of [its] actions regarding [the] plaintiff's request," refer this matter to "the Special Counsel for investigation[] pursuant to 5 U.S.C. § 552(a)(4)(F)," and "[a]ward [the] plaintiff [his] costs and reasonable attorney[']s fees incurred in th[is] action." Id. at 10.

The FBI filed its motion to dismiss or for summary judgment on December 21, 2007. In support of its motion, the FBI argues that "summary judgment should be entered in favor of the

FBI," Pl.'s Mem. at 3, because "the FBI has, in fact, conducted a reasonable search of all of the likely locations where responsive records would be maintained and found none," id. at 4 n.3.  In the words of the FBI, "[t]he only claim possibly remaining would be [the p]laintiff's request for fees and costs," id. at 4, which are "not available to the [p]laintiff," id. at 5.  It "submits that the only case or controversy remaining in this action is [the p]laintiff's asserted claim for costs[,] which must be dismissed."  Id.

The plaintiff asserts in response that "what the [FBI] has depicted as some sort of misunderstanding concerning the 'sequence' of the FBI's search[] are in fact severe factual inconsistencies in its administrative record that are nothing less than evidence of agency bad faith and an inadequate search."  Pl.'s Opp'n at 3-4.  He argues that "the [FBI] . . . has continually downplayed the fact that it is responsible for issuing an appeal determination through [Lopes,] which is wholly inconsistent with the administrative record it has provided to the Court," id. at 7, and that the declaration provided by FBI Section Chief David M. Hardy stating that the FBI's search was reasonable "fail[s] to meet the FOIA's requirements of being reasonably detailed enough to show that the [FBI's] search was reasonable, adequate, and in good faith," id. at 10.  The plaintiff further contends that he is entitled to attorney's fees and costs notwithstanding the fact that he is representing himself pro se.  Id. at 13-14.  The FBI contests all of these arguments in its reply brief.  See generally FBI's Reply.

## II. Standard of Review

As noted above, the FBI seeks relief pursuant to both Rule 12 and Rule 56.  However, the FBI's only argument for dismissal pursuant to Rule 12—that "'under the FOIA, "once the records are produced the substance of the controversy disappears and becomes moot,"'" FBI's Mem. at 2 (quoting Trueblood v. U.S. Dep't of Treasury, 943 F. Supp. 64, 67 (D.D.C. 1996)

(quoting <u>Crooker v. U.S. State Dep't</u>, 628 F.2d 9, 10 (D.C. Cir. 1980)))—is not colorable given

that no documents have been produced in this case and that the parties' dispute is over the

adequacy of the FBI's search, not the withholding of documents.  Thus, the only rule governing

the Court's review in this case is Rule 56.

Under Rule 56, summary judgment is appropriate if "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  When ruling on a Rule 56 motion, the Court must view the evidence in the light

most favorable to the non-moving party.  <u>Holcomb v. Powell</u>, 433 F.3d 889, 895 (D.C. Cir.

2006) (citing <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 150 (2000)).  The Court must

therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-

moving party's evidence as true.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 255 (1986).  The

non-moving party, however, cannot rely on "mere allegations or denials," <u>Burke v. Gould</u>, 286

F.3d 513, 517 (D.C. Cir. 2002) (quoting <u>Anderson</u>, 477 U.S. at 248) (internal quotation and

citation omitted), for "conclusory allegations unsupported by factual data will not create a triable

issue of fact," <u>Pub. Citizen Health Research Group v. FDA</u>, 185 F.3d 898, 908 (D.C. Cir. 1999)

(internal quotation and citation omitted).  If the Court concludes that "the non-moving party has

failed to make a sufficient showing on an essential element of [its] case with respect to which [it]

has the burden of proof," then the moving party is entitled to summary judgment.  <u>Celotex Corp.</u>

<u>v. Catrett</u>, 477 U.S. 317, 323 (1986).

### III.  Legal Analysis

The sole issue before the Court is whether the FBI's search for records responsive to the

plaintiff's FOIA request was adequate.  An agency that is responding to a FOIA request must

make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Baker & Hostetler LLP v. Dep't of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006) (internal quotation and citation omitted); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (stating that "[an] agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents" (internal quotation and citation omitted)).  While "an agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested," Campbell v. Dep't of Justice, 164 F.3d 20, 28 (D.C. Cir. 1998) (internal quotation and citation omitted), the search "need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the [plaintiff's] specific request," Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986); see also id. at 953 (stating that "[i]t would be unreasonable to expect even the most exhaustive search to uncover every responsive file" (emphasis in original)).

Thus, "[t]here is no requirement that an agency search every record system" in which responsive documents might conceivably be found.  Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  Rather, the agency must demonstrate the adequacy of its search by providing a "reasonably detailed affidavit, setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Id.  "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation and citation omitted).

Here, the FBI has submitted a revised declaration from David M. Hardy, the Section Chief of the Record/Information Dissemination Section of the FBI's Records Management

Division.  FBI's Reply, Ex. A (Revised Declaration of David M. Hardy) (the "Hardy Decl.")

¶ 1.[3]  In his revised declaration, Hardy explains at length the record-keeping systems utilized by

the FBI, Hardy Decl. ¶¶ 10-11, 14-17, and the means used to search them, id.  ¶¶ 12-13, 18.  He

further states that the FBI searched both its CRS and ELSUR databases for any references to the

plaintiff's name (as well as several permutations thereof), date of birth, or Social Security

Number.  Id. ¶ 21.  According to Hardy, "[t]his search failed to locate any main investigatory

files responsive to [the] plaintiff's request."  Id.

The plaintiff challenges the adequacy of this search in two ways.  First, he asserts that

Hardy's explanation cannot be credited because the FBI has acted in bad faith, citing his

telephone conversation with Lopes as evidence of inconsistency in the agency's explanations.

Pl.'s Opp'n at 3-10.  Second, he asserts that Hardy's explanation is insufficient on its face to

sustain a finding that the agency's search was adequate because the explanation is too vague.  Id.

at 6-7, 10.

The plaintiff's bad faith argument is specious.  The only evidentiary basis for this

argument is a recording of a conversation between the plaintiff and Special Agent Lopes along

with a transcript of the recording, which appears to have been prepared by the plaintiff himself.

See generally Pl.'s Opp'n, Ex. I (Document Labeled "Official Transcript of FBI FOIA Appeal

Determination") (the "Lopes Tr.").  Neither of these exhibits has been authenticated in the

manner required  by Federal Rule of Evidence 901.  See Fed. R. Evid. 901(a) ("The requirement

of authentication or identification as a condition precedent to admissibility is satisfied by

evidence sufficient to support a finding that the matter in question is what its proponent

---

[3]  Hardy submitted an initial declaration in support of the FBI's motion.  See generally FBI's Mem., Ex. A (Declaration of David M. Hardy).  His revised declaration, submitted in conjunction with the FBI's reply brief, provides more detail than his original declaration regarding the scope of the FBI's search, but otherwise the declarations are substantially identical.  Hardy Decl. n.1.

claims."); cf. Int'l Distributing Corp. v. Am. Dist. Tel. Co., 569 F.2d 136, 138 (D.C. Cir. 1977)

(permitting the use of certified transcripts of prior hearings in the summary judgment context).

But even if the exhibits were admissible, they would not advance the plaintiff's cause.

First, the exhibits themselves do not indicate any bad faith on the part of Lopes. As set

forth in the transcript of her alleged conversation with the plaintiff, Lopes explained that after the

plaintiff appealed the FBI's initial determination regarding his FOIA request, the FBI searched

its main CRS database and "cross-referenced [its] files at [FBI] headquarters and [all] field

office[s]" without success. Lopes Tr. at 3. Lopes then explained that initially a search was not

performed of the FBI's field offices, but that it was the usual practice of the agency to cross-

check with its field offices upon receipt of an appeal of its initial determination. Id. at 4. She

further explained that the FBI's search of its field offices was not a specific search through each

office's archives, but rather was a search of the indices for those offices to see if any reference to

the plaintiff appeared in the indices. Id. at 5. According to the plaintiff, Lopes stated:

> We type your name in, OK, if there's any records in any of the
> field offices under your name, matching your date of birth and
> social security number, it's gonna come up, OK. So when they put
> your name in, nothing comes up, no field office records, no
> headquarters records.

Id.

Nothing about this exchange with the plaintiff suggests bad faith on the part of Special

Agent Lopes. The plaintiff fixates on the representation from Lopes that all of the field offices

for the FBI were searched, which, he contends, contradicts a line in the agency's June 25, 2007

letter advising the plaintiff to pursue his request for a search of the FBI's Alexandria, Virginia

field office with that office. Pl.'s Opp'n at 7, 9. But Lopes explained that the field office search

conducted by the FBI was intended to see only whether any records pertaining to the plaintiff

were located at a field office, and that the plaintiff would need to contact the field office directly

to obtain any document pertaining to him.  Lopes Tr. at 5; see also 28 C.F.R. § 16.3 (2006)

(requiring all requests "[f]or records held by a field office of the [FBI]" to be made "directly to

that FBI . . . field office address"); id. § 16.41(a) (same).  Thus, there is no conflict between

Lopes's representations and the suggestion in the FBI's June 25, 2007 letter that the plaintiff

pursue his request for documents held by the Alexandria, Virginia field office with that office.

        Nor are there any material inconsistencies in Lopes's representations regarding the timing

of the FBI's search.  She initially stated that "the appeal attorney asked [Lopes's division] to do

another search" "after the [plaintiff's] appeal was opened."  Lopes Tr. at 4.  And while Lopes

suggested at one point that the search of indices for FBI field offices must have taken place after

she initially spoke with the plaintiff sometime after the issuance of the June 25, 2007 letter, she

quickly corrected herself, clarifying that after the plaintiff appealed the FBI's initial

determination, "the appeal attorney" told her division "to do another search for all cross

reference files" and "all field office files," which "came up with nothing at all."  Id.

        A reasonable jury therefore could not infer that Lopes's representations were so internally

"inconsistent that [they] seemed predicated only on preventing [the p]laintiff from actually filing

a complaint" as the plaintiff suggests.  Pl.'s Opp'n at 9.  And even if they could, the fact remains

that the FBI "search[ed] [] all of the likely locations where responsive records would be

maintained, and found none."  FBI's Mem. at 4 n.4.  The alleged inconsistencies in Lopes's

representations to the plaintiff do not call that fact into question.

        The plaintiff argues that in addition to the substance of the representations made by

Lopes, the FBI demonstrated its bad faith by failing to release a written record of the plaintiff's

conversation with her, which the plaintiff characterizes as a separate "appeal determination[]"

subject to 28 C.F.R. § 16.9(b).  Pl.'s Opp'n at 8.  But Lopes did not make any sort of

determination about the legitimacy of the plaintiff's appeal—that determination was made in the

FBI's June 25, 2007 letter rejecting the plaintiff's appeal.  Rather, the obvious purpose of her

phone call was to assist the plaintiff in understanding the FBI's decision.  Indeed, both examples

of "bad faith" proffered by the plaintiff—the search for records held by FBI field offices, and the

phone call from Lopes—are instances in which the FBI went beyond its regulatory obligations in

an attempt to better assist the plaintiff.  The plaintiff's assertions of bad faith are therefore ironic,

albeit unpersuasive.  The Court thus concludes that the FBI is entitled to summary judgment with

respect to the plaintiff's "bad faith" claim.

The Court cannot, however, grant the FBI's motion in its entirety.  As the plaintiff

correctly points out, some aspects of Hardy's explanation regarding the adequacy of the FBI's

search are not "reasonably detailed enough to show that the [FBI's] search was reasonable,

adequate, and in good faith."  Id. at 10.  Specifically, Hardy's explanation regarding the

adequacy of the FBI's search with respect to the additional search terms supplied by the

plaintiff's attorney in his February 28, 2006 letter to the FBI is too vague for the Court to

conclude that the search performed by the FBI was sufficient.

In his revised declaration, Hardy admits that the FBI did not search its CRS, field office

indices, or the ELSUR using the search terms provided by the plaintiff's counsel in his February

28, 2006 letter, such as the name of the website giving rise to the plaintiff's inquiry, the aliases

of various account users on that website, or the subject matter discussed on the website.  Hardy

Decl. ¶ 22.  Hardy justifies this oversight in two ways.  First, he asserts that "[i]n in the absence

of a specific request for a search of 'cross-references' at the administrative level, the FBI's

current policy is to search for and identify only 'main' files responsive to FOIA/Privacy Act

requests," and that in this case "[the] plaintiff did not specifically request that a search be conducted for cross-references." Id. Second, he states that the search conducted by the FBI would have located "any main files or cross-references that were responsive to [the] plaintiff's request for records," and that "[u]sing the additional terms provided by [the] plaintiff in his appeal letter would not [have] locate[d] additional records responsive to the plaintiff's request." Id.

Neither of these "explanations" is satisfactory to the Court. First, the plaintiff did in fact make a "specific request" for a search of additional terms in the February 28, 2006 letter appealing the FBI's initial determination, and "[a] court evaluates the reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception." Campbell, 164 F.3d at 28. Further, even if the FBI had a good reason not to search for additional terms at the appellate stage of a FOIA request, Hardy does not provide it. He simply recites the "current policy" of the FBI with respect to initial FOIA requests as though the rationale behind and applicability of this policy were apparent. They are not, and the FBI's naked reliance on its own procedures does not satisfy its "duty to construe a FOIA request liberally." Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995).

As for Hardy's dismissal of the relevance of the additional search terms provided by the plaintiff, his assertion is not "sufficient to demonstrate compliance with the obligations imposed by the FOIA." Morley v. CIA, 508 F.3d 1108, 1121 (D.C. Cir. 2007) (internal quotation and citation omitted). Hardy does not explain why a search for the terms suggested by the plaintiff—in particular, the aliases employed by the plaintiff on the website in question—could not produce any records other than records cross-referenced to the plaintiff's name, date of birth, or social security number. He simply declares that a search using any of these terms would fail. This

11

statement "does not show, with reasonable detail, that the search method [employed by the FBI] was reasonably calculated to uncover all relevant documents." Oglesby, 920 F.2d at 68.

## IV. Conclusion

"[A] mere assertion of bad faith is not sufficient to overcome a motion for summary judgment." Assassination Archives & Research Ctr. v. CIA, 177 F. Supp. 2d 1, 8 (D.D.C. 2001). Here, the plaintiff has produced no evidence sufficient to rebut the "presumption of good faith" accorded agency affidavits like the declaration supplied by the FBI in this case. Safecard Servs., 926 F.2d at 1200. The Court will therefore grant the FBI's motion for summary judgment with respect to the plaintiff's "bad faith" claim.

At the same time, "[i]f . . . the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper," Campbell, 164 F.3d at 27, and in this case the Court harbours "substantial doubt" as to the adequacy of the FBI's search based on its failure to explain adequately why it did not search its files using the additional search terms supplied by the plaintiff in his February 28, 2006 letter to the FBI. The Court will therefore deny without prejudice the balance of the FBI's motion.[4] Further, the Court will direct the parties to file a joint proposed briefing schedule so the Court can resolve the issues raised by the plaintiff with respect to both defendants' searches in response to his FOIA requests.

**SO ORDERED** this 23rd day of September, 2008.[5]

REGGIE B. WALTON
United States District Judge

---

[4] Because the Court cannot yet determine whether the FBI's search was entirely adequate, the agency's request for summary judgment is not yet ripe and must also be denied without prejudice as a consequence.

[5] An order will be issued contemporaneously with this memorandum opinion (1) granting in part and denying in part without prejudice the FBI's motion to dismiss or for summary judgment, (2) granting summary judgment in favor of the FBI with respect to Count I of the plaintiff's complaint, and (3) directing the parties to file a joint proposed briefing schedule by a specified date.