UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
MARTIN F. WIESNER,                  )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   Civil Action No. 07-1599 (RBW)
                                    )
FEDERAL BUREAU                      )
OF INVESTIGATION and                )
CENTRAL INTELLIGENCE AGENCY,        )
                                    )
            Defendants.             )
_____ )

## MEMORANDUM OPINION

Martin F. Wiesner, the pro se plaintiff in this civil lawsuit, seeks "the disclosure and release of agency records" allegedly withheld by the Federal Bureau of Investigation (the "FBI") and the Central Intelligence Agency (the "CIA" or "Agency") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (2006) (the "FOIA"). Complaint (the "Compl.") ¶ 1. Currently before the Court is the CIA's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. After carefully considering the plaintiff's Complaint, the CIA's motion, and all memoranda of law and exhibits relating to that motion,[1] the Court concludes for the reasons that follow that it must grant the motion.

---

[1] In addition to the plaintiff's Complaint and the CIA's Motion for Summary Judgment, the Court considered the following documents in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendant Central Intelligence Agency's Motion for Summary Judgment (the "CIA's Mem."); (2) the Defendant Central Intelligence Agency's Statement of Material Facts as to Which There Is No Genuine Dispute (the "CIA's Facts"); (3) the Opposition to Central Intelligence Agency's Motion for Summary Judgment (the "Pl.'s Opp'n"); (4) the Defendant Central Intelligence Agency's Reply Memorandum (the "CIA's Reply"); and (5) the Statement of Material Facts as to Which It Is Contended There Is a Genuine Issue to Be Litigated (the "Pl.'s Facts").

## I. Background

The basic facts of this case are uncontested.[2]  "By letter dated February 9, 2006," the plaintiff "made a request" to the CIA under the FOIA for all files pertaining to him.[3]  CIA's Facts ¶ 1.  The CIA informed the plaintiff in a letter dated February 23, 2006, that it had "received" and "accepted" his request, and that it would, barring any objections by the plaintiff, conduct a "search [only] for CIA-originated records existing through the date of this acceptance letter."  CIA's Mem., Ex. 3 (Declaration of Scott A. Koch) (the "Koch Decl."), Ex. B.  The plaintiff "bore no objection" to the CIA's limitation.  Compl. ¶ 25.  The CIA then searched "all" of its locations "likely to have records responsive" to the plaintiff's request, CIA's Facts ¶ 2, including "records maintained in the National Clandestine Service and the Directorate of Support, Office of Security," id. ¶ 3.  The CIA conducted the search "using variations of [the] plaintiff's name, . . . date of birth[,] and social security number."  Id.  "By letter[] dated March 7, 2006, the CIA notified [the p]laintiff that it had conducted a search and . . . found no records responsive to his FOIA request."  Id. ¶ 4.

The plaintiff, through counsel, submitted a letter dated April 13, 2006, in which he administratively appealed the CIA's determination.  CIA's Mem., Koch Decl. Ex. D.  The plaintiff, having an apparent change of heart, objected to the CIA limiting its search for CIA-

---

[2]  Although the plaintiff filed a Statement of Material Facts as to Which It Is Contended There Is a Genuine Issue to Be Litigated, the plaintiff does not actually dispute any of the facts asserted by the defendant.  The plaintiff merely argues that the "affidavits presented to this Court by the defendant fail to explain why it has continuously refused to search for the requested records in [the p]laintiff's initial request and appeal, and instead chosen only to selectively focus on 'CIA-originated' records."  Pl.'s Facts at 1.  The Court construes this statement as a challenge to the sufficiency of the defendant's factual assertions to prevail on its motion for summary judgment, rather than an objection as to the veracity of the defendant's factual averments.  The Court therefore treats the CIA's asserted facts as undisputed for the purpose of ruling on its motion for summary judgment.

[3]  The plaintiff alleges in his complaint that his FOIA request "stem[s] from [his] involvement on a website, dating from September 21, 2002, where he discussed materials and methods used in suicide bombings, opposition to military action in Iraq, the impeachment of President Bush, and the 2002 [District of Columbia-]area sniper shootings."  Compl. ¶ 6.

originated documents, demanding instead that the CIA search for "all data maintained by [the CIA] pertaining to him." Id. The plaintiff also instructed the CIA to do the following:

> [U]se the following leads and information to search for CIA records pertaining to Mr. Wiesner: the website[] www.dogsonacid.com aka "DOA"; persons using aliases (account names) on this website, including aliases "Telavasquez[,]"[] "Benedict Arnold[,]"[] "Suicide Bomba[,]"[] and "E.O.P"; opposition to the invasion of Iraq, the impeachment of President Bush, methods and materials used for "suicide bombings," and the D.C. area sniper shootings of 2002.

Id. The CIA denied the plaintiff's appeal on August 9, 2006, on the grounds that it had conducted a "thorough and diligent search[] for all records . . . in the appropriate records systems" but was "unable to locate any records responsive to [the plaintiff's] request." Id., Ex. F. The plaintiff then filed his complaint in this Court on September 7, 2007, alleging, inter alia, that the CIA "unlawfully withheld or unreasonably delayed" the production of documents responsive to his request, id., and requesting that the Court "[o]rder [the CIA] to produce the requested records in their [entirety], and make copies available to [the] plaintiff," as well as "[a]ward [the] plaintiff [his] costs and reasonable attorney[']s fees incurred in this action." Compl. at 10.

The CIA now requests that it be awarded summary judgment, arguing that it "has conducted a reasonable search of its records, located no responsive records, and therefore no records have been improperly withheld from [the p]laintiff." Def.'s Mem. at 1. In support of its motion for summary judgment, the CIA attached the declaration of Scott A. Koch, Section Chief, Information Review and Release Group, Information Management Services for the Office of the Chief Information Officer, in which Mr. Koch explained the CIA's general process for responding to a request under the FOIA, CIA's Mem., Koch Decl. ¶¶ 10-14, as well as the specific efforts that the CIA employed in responding to the plaintiff's request, id. ¶¶ 15-22.

3

The plaintiff, in his opposition to the CIA's motion, raises two arguments in response to the CIA's assertion that the search was adequate. First, he claims that the search was inadequate because the CIA searched only for "CIA-originated" documents and "refus[ed] to search for <u>all</u> records pertaining to [the] plaintiff." Pl.'s Opp'n at 2. Second, he claims that the CIA "refus[ed] to utilize the necessary information included in [the] plaintiff's appeal to locate [these] records." <u>Id.</u>

In its reply, the CIA states that "[w]hile it is true that the CIA's initial search was limited to CIA-originated records . . . , the CIA made clear that it conducted an additional search in response to [the p]laintiff's administrative appeal and that the second search was for <u>all</u> CIA records." CIA's Reply at 6 (internal quotation marks omitted). As for the suggested leads submitted by the plaintiff in his administrative appeal, the CIA argues that it had no obligation to conduct a new search because the leads "provided no assistance to the CIA in locating responsive records in its record systems and provided no basis for the [A]gency to believe that the leads would direct the [A]gency to records maintained under the name 'Martin Wiesner.'" <u>Id.</u> at 9. The CIA further contends that "[a]ny such records would have been located in the initial and appeal searches," and that "any records with references to the suggested leads and information . . . would not include references to 'Martin Frederick Wiesner.'" <u>Id.</u> at 8.

## II. Standard of Review

Under Rule 56, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When ruling on a Rule 56 motion, the Court must view the evidence in the light most favorable to the non-moving party. <u>Holcomb v. Powell</u>, 433 F.3d 889, 895 (D.C. Cir.

4

2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).  The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The non-moving party, however, cannot rely on "mere allegations or denials," Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248) (internal quotation marks omitted), for "conclusory allegations unsupported by factual data will not create a triable issue of fact," Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal brackets and quotation marks omitted).  If the Court concludes that "the non-moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

### III. Legal Analysis

The sole issue before the Court is whether the CIA's search for records responsive to the plaintiff's FOIA request was adequate.  An agency that is responding to a FOIA request must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006) (internal quotation and citation omitted); see also Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (stating that "[an] agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents" (internal quotation marks omitted)).  While "an agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested," Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 28 (D.C. Cir. 1998) (internal quotation marks omitted), the search "need not be perfect, only adequate, and adequacy

is measured by the reasonableness of the effort in light of the [plaintiff's] specific request," Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986); see also id. at 953 (stating that "[i]t would be unreasonable to expect even the most exhaustive search to uncover every responsive file").

Thus, "[t]here is no requirement that an agency search every record system" in which responsive documents might conceivably be found. Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Rather, an agency must demonstrate the adequacy of its search by providing a "reasonably detailed affidavit, setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Id. "Once the agency has shown that its search was reasonable, the burden shifts to [the plaintiff] to rebut [the defendant's] evidence . . . either by contradicting the defendant's account of the search procedure or by raising evidence of the defendant's bad faith." Moore v. Aspin, 916 F. Supp. 32, 35-36 (D.D.C. 1996) (citing Miller v. U.S. Dep't of State, 779 F.2d 1378, 1383-84 (8th Cir. 1985)). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

Here, the CIA has submitted the declaration from Mr. Koch, in which he explains at length the record-keeping systems utilized by the CIA, CIA Mem., Koch Decl. ¶¶ 7-9, and the process employed to search them, id. ¶¶ 10-14. He further states that the CIA, in processing the plaintiff's request, conducted an initial search for CIA-originated records maintained in the National Clandestine Service and the Directorate of Support, Office of Security, for any references to the plaintiff's name (as well as several permutations thereof), date of birth, and

social security number.  Id. ¶ 17.  According to Mr. Koch, "[t]hese diligent searches failed to disclose any records."  Id.  After accepting the plaintiff's appeal on May 2, 2006, id. ¶ 20, the CIA "conducted another thorough search, to include all records, using the same search terms used in the first search," id. ¶ 21.  "Once again, [the] CIA was unable to locate any records pertaining to [the p]laintiff."  Id.

The plaintiff challenges the adequacy of this search in two ways.  The plaintiff's first claim—that the CIA wrongfully limited its search to only those documents originated by the Agency—can be quickly disposed of.  The CIA notified the plaintiff in its February 23, 2006 letter that it would search only for CIA-originated records and that the plaintiff was free to object to this limitation.  While the plaintiff did not object prior to the CIA completing its initial search, when he did object to the scope of that search in his April 13, 2006 appeal letter, the Agency conducted a search for all records using the same search terms used in the first search.[4]  The CIA then notified the plaintiff in its August 9, 2006 letter that the all-records search produced no documents either.  The plaintiff has not offered any evidence to suggest that the Agency's second search was faulty or conducted in bad faith, and the Court therefore concludes that the CIA's second search for all documents was reasonable and adequate.

The plaintiff's second claim—that the CIA unjustifiably refused to search for the additional terms listed in his April 13, 2006 appeal letter—cannot be so easily addressed.  In an earlier memorandum opinion issued in this case, Wiesner v. FBI, 577 F. Supp. 2d 450 (D.D.C. 2008) (Walton, J.), the Court addressed a similar situation involving the FBI's refusal to conduct

---

[4] Had the Agency, after receiving the plaintiff's objection, declined to search for non-CIA-originated records, then the plaintiff would be correct that the CIA failed to comply with its duty to search for all agency records.  See McGehee v. CIA, 697 F.2d 1095, 1109 (D.C. Cir. 1983) (holding that the term "agency records," as used in the FOIA, includes all records in the possession of an agency).  The Agency, however, did conduct a search for all records upon receiving the plaintiff's objection, so McGehee is inapposite.

7

a search of additional terms that the Agency obtained in the plaintiff's appeal letter.  The FBI refused to conduct a new search because "using the additional terms provided by the plaintiff in his appeal letter would not have located additional records responsive to the plaintiff's request."  Id. at 457 (internal brackets omitted).  The Court denied the FBI's motion for summary judgment on the grounds that the FBI's "explanation regarding the adequacy of the [its] search . . . is too vague for the Court to conclude that the search performed by the FBI was sufficient."  Id.  The Court concluded that the FBI's declaration that "a search using any of these terms would fail . . . does not show, with reasonable detail, that the search method [employed by the FBI] was reasonably calculated to uncover all relevant documents."  Id. at 458 (internal quotation marks omitted).

Accordingly, it would appear to the Court that the CIA's explanation for refusing to conduct a search of the additional terms also does not suffice to show that the Agency's actions were reasonable, adequate, and in good-faith.  The CIA, like the FBI, claims that the plaintiff's additional search terms would not lead to responsive documents, and that any records pertaining to the plaintiff "would have been located in the initial and appeal searches" that were conducted by the Agency.  CIA's Reply at 8.  This explanation is no more detailed than the one provided by the FBI in its motion for summary judgment, and based on the reasoning in Wiesner, the CIA would not prevail on its motion for summary judgment.

The CIA, however, presents a new argument in the motion now before the Court that the FBI did not raise (and consequently the Court did not consider) in Wiesner: that the plaintiff's suggested leads in his appeal letter constituted a "new search," which, under Kowalczyk v. U.S. Dep't of Justice, 73 F.3d 386 (D.C. Cir. 1996), the Agency is not obligated to conduct and a court is not to consider in determining the adequacy of the Agency's efforts to locate responsive

8

documents. See id. at 388 (setting aside the plaintiff's "subsequent clarification" in determining whether the FBI's search was adequate, reasonable, and in good-faith). In that case, Kowalczyk sought from the FBI "all records in agency files, including but not limited to . . . [f]ederal case number 88 CR 701 and counsel for the defense[,] Louis E. Diamond and Louis Rosenthal, Esq." Id. Five months later, the plaintiff submitted an administrative appeal asking for "all [a]gency records pertaining to . . . [c]riminal [c]ase [n]umber 88 CR 701[] in the Eastern District of New York." Id. (emphasis added). Upon discovering that the FBI did not conduct a search for responsive documents in its New York field office, Kowalczyk brought suit against the Agency.

The District of Columbia Circuit, ruling in favor of the FBI, first began its analysis by "setting aside Kowalczyk's letter of appeal." Id. The circuit court concluded that "a reasonable effort to satisfy [a] request does not entail an obligation to search anew based upon a subsequent clarification" because "[r]equiring an additional search each time the [A]gency receives a letter that clarifies a prior request could extend indefinitely the delay in processing new requests." Id. The circuit court then "[f]ocus[ed] upon Kowalczyk's original FOIA request" and observed that the original request "made no reference to the New York field office or, indeed, to New York." Id. at 389. The circuit court therefore concluded that "[t]he information in Kowalczyk's request . . . did not enable the FBI to determine that the New York Field office had responsive records." Id.

The circuit court did recognize, however, that there may be times that an agency may have to "pursue . . . a lead it cannot in good faith ignore, i.e., a lead that is both clear and certain." Id. The circuit court, however, perceived such situations to be "rare" and arising in situations where "an agency record contains a lead so apparent that the Bureau cannot in good faith fail to pursue it." Id. (emphasis added). Put differently, an agency need only pursue leads

9

that raise red flags pointing to the probable existence of responsive agency records that arise during its efforts to respond to a FOIA request.[5] See id. (concluding that "in order [for the FBI] to incur any obligation to search the New York field office, the Bureau would have had to find a document at headquarters specifically indicating that documents related to a case bearing the number 88 CR 701 were located in its New York office"). "[A]n agency's hesitancy to pursue potential leads after its search has been completed," however, does not lead to the conclusion that the agency's "search [was] inadequate," nor does it "justif[y] reviving unexhausted claims." Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of the Interior, 503 F. Supp. 2d 88, 100 (D.D.C. 2007) (Walton, J.).

In light of the circuit court's holding in Kowalczyk, the Court concludes that it erred in Wiesner by considering the additional search terms in determining whether the FBI conducted a reasonable and adequate search. The suggested leads proffered by the plaintiff in his appeal letter to the FBI constituted a new search that the Agency had no obligation to conduct. Likewise, the additional search terms proffered by the plaintiff to the CIA in his appeal letter cannot be a part of the Court's calculus to determine whether the CIA conducted a search that was "reasonably calculated to uncover all relevant documents." Steinberg, 23 F.3d at 551. Rather, the Court must focus only on the plaintiff's original request to the CIA, and the Agency's

---

[5] Contrary to the Court's suggestion in Wiesner, Campbell does not suggest that additional leads provided by the requestor must be pursued by the Agency. There, the circuit court noted that the FBI, in handling Campbell's request, "started with the reasonable assumption that only a [limited] review would be necessary, but that assumption became untenable once the FBI discovered information suggesting the existence of documents that it could not locate without expanding the scope of its search." Campbell, 164 F.3d at 28. The "discovered information" that the circuit court alluded to were documents located as a result of the initial search that suggest "through administrative annotations and express references in the text" that other responsive documents could be found in a different index or file. See id. at 27. In other words, the "discovered information" fell within the "rare" exception recognized by the circuit court in Kowalczyk—a clear and certain lead found in the population of agency records that resulted from the Agency's reasonable search for documents. Campbell does not, however, address an agency's obligations upon receiving a clarification by the requestor after it has already completed its search.

efforts to respond to that request, in making its determination. The Court's decision in Wiesner does not conform to the law of this circuit and is therefore vacated.

Disregarding the additional leads identified in the plaintiff's appeal letter, it is evident to the Court that the CIA conducted an adequate and reasonable search for documents responsive to the plaintiff's original request. That request was limited to one for documents that pertained to him. CIA's Facts ¶ 1. Naturally, documents that pertained to the plaintiff were likely to contain either his name, variations of his name, or other identifiers, such as his birthday and social security number. Mr. Koch, in his affidavit, states that the Agency ran searches using these leads in its effort to discover the requested information. See CIA Mem., Koch Decl. ¶ 17 ("The components searched [for CIA-originated records] using variations of the requestor's name – Martin Frederick Wiesner – along with his year of birth and social security number."); id. ¶ 21 ("[T]he relevant components . . . conducted another thorough search, to include all records, using the same search terms used in the first search."). While the CIA initially limited its search to CIA-originated documents, see id. ¶ 17, it conducted a search for all documents after the plaintiff objected to this limitation in his appeal letter, see id. ¶ 21. The plaintiff has failed to offer any evidence to rebut the declarations in Mr. Koch's affidavit, and the Court, therefore, concludes that the CIA conducted an adequate, reasonable, and good-faith search in response to the plaintiff's initial FOIA request.

### IV. Conclusion

In sum, the Court must conclude that the CIA's response to the plaintiff's original FOIA request was adequate, reasonable, and in good-faith. The plaintiff has failed to set forth any specific facts to refute the CIA's affidavit and attachments evidencing that it had, in fact, conducted a search of all records in its possession in an attempt to respond to the plaintiff's

FOIA request. Furthermore, the CIA had no obligation to conduct a new search based on the additional terms submitted by the plaintiff in its April 13, 2006 appeal letter; indeed, "it would be untenable to hold that, as the FOIA litigation proceeds, a plaintiff, by continually adding new requests . . . could command a priority based on the date of the initial requests." Biberman v. FBI, 528 F. Supp. 1140, 1144 (S.D.N.Y. 1982) (internal quotation marks omitted). The Court, therefore, will grant the CIA's motion for summary judgment.

**SO ORDERED** this 12th day of November, 2009.[6]

REGGIE B. WALTON<br>
United States District Judge

---

[6] The Court issued an order consistent with this memorandum opinion on September 30, 2009. That order is now final upon the issuance of this memorandum opinion. Additionally, a supplemental order will be issued contemporaneously with this memorandum opinion vacating this Court's order of September 23, 2008, in which the Court granted in part and denied in part the FBI's motion to dismiss or, in the alternative, for summary judgment.