UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
MARTIN F. WIESNER,                      )
                                        )
            Plaintiff,                  )
                                        )
        v.                              )    Civil Action No. 07-1599 (RBW)
                                        )
FEDERAL BUREAU OF                       )
INVESTIGATION and                       )
CENTRAL INTELLIGENCE AGENCY,            )
                                        )
            Defendants.                 )
_____)

**MEMORANDUM OPINION**

Martin F. Wiesner, the pro se plaintiff in this civil lawsuit, seeks "the disclosure and release of agency records" allegedly withheld by the Federal Bureau of Investigation (the "FBI") and the Central Intelligence Agency (the "CIA" or "Agency") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (2006) (the "FOIA"). Complaint (the "Compl.") ¶ 1. On September 23, 2008, the undersigned member of the Court issued a memorandum opinion and order granting the FBI's motion for summary judgment with respect to the plaintiff's claim of bad faith on the part of the Agency in responding to the plaintiff's FOIA request, but denying the balance of the FBI's motion without prejudice "based on its failure to explain adequately why it did not search files using the additional search terms supplied by the plaintiff in his February 28, 2006 [appeal] letter." Wiesner v. FBI, 577 F. Supp. 2d 450, 458 (D.D.C. 2008) ("Wiesner I"). Now before the Court is the plaintiff's motion for reconsideration of the Court's decision to dismiss his "bad faith" claim in Wiesner I, as well as the defendant's renewed motion for summary judgment with respect to the plaintiff's "inadequate search" claim, both of which are

brought under Federal Rule of Civil Procedure 56.  After carefully considering the plaintiff's Complaint, the FBI's renewed motion for summary judgment, the plaintiff's cross-motion for relief from judgment, and all memoranda of law and exhibits submitted with these motions,[1] the Court concludes for the reasons that follow that it must deny the plaintiff's motion for reconsideration and, in light of the memorandum opinion and order issued this same date in Wiesner v. FBI, Civil Action No. 07-1599 (RBW), __ F. Supp. 2d __, slip op. (D.D.C. November 12, 2009) ("Wiesner II"), which vacated the Court's denial of the FBI's initial motion for summary judgment, the Court concludes that it must grant that motion and deny the Agency's renewed motion for summary judgment as moot.[2]

I. The Plaintiff's Motion for Reconsideration

The plaintiff's request for reconsideration of Wiesner I centers on statements made by FBI Special Agent Debbie Lopes during a purported August 9, 2007 conversation she had with

---

[1] In addition to the plaintiff's Complaint, the FBI's Renewed Motion for Summary Judgment, and the plaintiff's Opposition to Defendant FBI's Renewed Motion for Summary [Judgment] and Cross-Motion for Relief from Judgment (the "Pl.'s Ren'd Opp'n"), the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendant Federal Bureau of Investigation's Motion to Dismiss or, in the Alternative, for Summary Judgment (the "FBI's Mem."); (2) Defendant Federal Bureau of Investigation's Statement of Material Facts as to Which There Is No Genuine Dispute (the "FBI's Facts"); (3) Opposition to Defendant Federal Bureau of Investigation's Motion to Dismiss or, in the Alternative, for Summary Judgment (the "Pl.'s Opp'n"); (4) Defendant Federal Bureau of Investigation's Reply Memorandum (the "FBI's Reply"); (5) the Statement of Material Facts as to Which It Is Contended There Is a Genuine Issue to Be Litigated (the "Pl.'s Facts"); (6) Defendant Federal Bureau of Investigation's Memorandum of Points and Authorities in Support of Defendant Federal Bureau of Investigation's Renewed Motion for Summary Judgment (the "FBI's Ren'd Mem."); (7) Defendant Federal Bureau of Investigation's [Renewed] Statement of Material Facts as To Which There is No Genuine Dispute (the "FBI's Ren'd Facts"); (8) the Statement of Material Facts as to Which It Is Contended There Is a Genuine Issue to Be Litigated (the "Pl.'s Ren'd Facts"); and (9) Defendant Federal Bureau of Investigation's Reply [to the Opposition to Defendant FBI's Renewed Motion for Summary [Judgment] and Cross Motion for Relief From Judgment] (the "FBI's Ren'd Reply").

[2] The Court issued an order on September 30, 2009, in which it granted the defendant's renewed motion for summary judgment.  For the reasons set forth in this memorandum opinion, the Court will vacate the September 30, 2009 order and issue an order accompanying this memorandum opinion clarifying the Court's rulings with regard to the FBI.

him.[3]  Specifically, he seeks to admit an audio recording and transcript of that conversation, both which were created on his initiative, to establish what he believes to be several inconsistencies as to the FBI's efforts to respond to his FOIA request.  Pl.'s Ren'd Opp'n at 3.  For the Court to consider the audio recording and transcript, the exhibits must, of course, be admissible under the Federal Rules of Evidence.  See Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000) ("[T]he court may consider [on summary judgment] any material that would be admissible or useable at trial, including properly authenticated and admissible documents or exhibits" (internal citation and quotation marks omitted)); Cuddy v. Wal-Mart Super Center, Inc., 993 F. Supp. 962, 967 (W.D. Va. 1998) ("It is true that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment.").  The Court previously ruled these items to be inadmissible, reasoning that "[n]either of these exhibits [had] been authenticated in the manner required by Federal Rule of Evidence 901."  Wiesner I, 577 F. Supp. 2d at 455.  The plaintiff now submits that the Court erred in its ruling, arguing that not only are the exhibits properly authenticated under Rule 901(a)(1), but that they are also admissible under Federal Rule of Evidence 1007.  Pl.'s Ren'd Opp'n at 2.

As an initial matter, the plaintiff's reliance on Rule 1007 is misplaced.  Rule 1007 is an exception to Federal Rule of Evidence 1002.[4]  31 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 8051 (3d ed. 2009).  Rule 1002 requires a party seeking "[t]o prove the content of a writing, recording, or photograph" to submit "the original writing, recording, or photograph."  Fed. R. Evid. 1002.  If, however, the original items are unavailable, then "other evidence of the contents of a writing, photograph, or photograph is admissible."  Fed.

---

[3] The Court has previously recounted the undisputed facts of this case in detail and need not repeat them again here. See generally Wiesner I, 577 F. Supp. 2d at 452-54.

[4] Rule 1002 states the central principle of what is commonly referred to as the "best evidence doctrine" or "best evidence rule."  31 Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure § 7181 (3d ed. 2009).

3

R. Evid. 1004.  Rule 1007 provides for one form of such "other evidence"; specifically, the rule allows for the "testimony, deposition, or written admission" of the party whom the evidence is being admitted against to prove the contents of a writing, recording, or photograph.  Fed. R. Evid. 1007.  But here, the plaintiff is seeking to admit the actual audio recording and transcript purportedly memorializing his telephone conversation with the defendant.[5]  Thus, Rule 1007 is inapposite to the situation here because the plaintiff is not seeking to admit secondary evidence to prove the contents of a writing, recording, or photograph.

Upon further reflection, however, the Court concludes that the plaintiff has presented at least a colorable claim that the audio recording and transcript have been, in fact, authenticated in accordance with Rule 901(b)(1).  To authenticate these exhibits under this rule, the plaintiff need only provide "[t]estimony of [a] witness with knowledge."  Fed. R. Evid. 901(b)(1).  "There is no single rigid standard for determining whether a tape recording may be admitted into evidence," United States v. Dale, 991 F.2d 819, 842 (D.C. Cir. 1993), and evidence to establish the admissibility of audio recordings "need not conform to any particular model," United States v. Haldeman, 559 F.2d 31, 107 (D.C. Cir. 1976).  The plaintiff, in his opposition to the FBI's initial motion for summary judgment, attached a declaration in which he affirmed, "under penalty of perjury," that the audio recording "is an exact record of [his] conversation [with Ms. Lopes]" and that he is the "person identified in [the] recording as 'Martin.'"  Pl.'s Opp'n, Ex. H, (Declaration of Martin F. Wiesner) at 1.  The plaintiff, being a party to the conversation and the person recording the conversation, would certainly qualify as a person with knowledge "that a matter is what it is claimed to be."  Fed. R. Evid. 901(b)(1); see also United States v. Strothers, 77 F.3d 1389, 1392 (D.C. Cir. 1996) ("Tapes may be authenticated . . . by testimony from parties

---

[5] While the plaintiff has not indicated whether he has submitted originals or duplicates of these exhibits, this omission does not affect the Court's analysis, for a duplicate is generally "admissible to the same extent as an original" under Federal Rule of Evidence 1003.

4

to the conversation affirming that the tape[s] contained an accurate record of what was said."). The plaintiff's declaration, therefore, may be sufficient to "support[] a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a).

But the Court need not definitively decide whether these exhibits have been authenticated or are otherwise admissible under the Federal Rules of Evidence, for the fact remains that the contents of the tape do nothing to establish bad faith on the part of the FBI. First, the plaintiff continues to "fixate[] on the representation from [Ms.] Lopes that all of the field offices for the FBI were searched, which, he contends, contradicts a line in the [A]gency's June 25, 2007 letter advising the plaintiff to pursue his request for a search of the FBI's Alexandria, Virginia field office with that office." Wiesner I, 577 F. Supp. 2d at 456; see also Pl.'s Ren'd Opp'n at 7 (stressing that there are "blatant inconsistencies between . . . the information disclosed by Ms. Lopes and the FBI's appeal attorney"); Pl.'s Ren'd Opp'n at 8 ("Simple logic would [suggest] that the search for "all field offices" that allegedly occurred, and the suggested search of the Washington field office[,] must be different in nature."). These recycled arguments were thoroughly addressed and rejected by the Court in Wiesner I, and "where litigants have once battled for the Court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Lemmons v. Georgetown Univ. Hosp., 241 F.R.D. 15, 22 (D.D.C. 2007) (Walton, J.) (quoting Judicial Watch v. Dep't of Army, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) (internal citation and quotation marks omitted)).

Nevertheless, in an effort to hammer the final nail in this particular coffin, the Court further concludes that any purported inconsistency between Ms. Lopes's statement and the FBI's June 25, 2007 letter is immaterial and, therefore, insufficient to establish bad faith on the part of the FBI. As the plaintiff himself made explicit during his conversation with Ms. Lopes,

5

regulations promulgated by the Department of Justice "specify that you have to file your request to one specific field office." Pl.'s Opp'n Ex. I (Transcript of Conversation with Debbie Lopes, FBI Special Agent) at 3; see also 28 C.F.R. § 16.3(a) (2008) ("For records held by a field office of the [FBI, a requestor] must write directly to that FBI . . . field office address . . . ."). The plaintiff, however, made no such request with any field office, directing his request solely to FBI headquarters. The FBI, therefore, had no obligation to search its field offices, and any purportedly inaccurate assertions by the Agency that it conducted such a search when, in fact, it did not, is of no consequence. Cf. SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1202 (D.C. Cir. 1991) (concluding that the existence of inconsistent Vaughn indicies is nothing more than a "trivial" matter that does not support a finding of bad faith); Dorsett v. U.S. Dept. of Treasury, 307 F. Supp. 2d 28, 41 (D.D.C. 2004) (Walton, J.) (finding the plaintiff's argument of an inconsistency as to when the government received the plaintiff's FOIA request not material and, therefore, not an indication of bad faith). The Court concludes that any alleged inconsistency between Ms. Lopes's conversation with the plaintiff and the FBI's June 25, 2007 letter is entirely immaterial as to whether the Agency acted in bad faith.

      The plaintiff attempts to establish another "inconsistency" between his conversation with Ms. Lopes and the June 25, 2007 letter: he alleges that she informed him during their August 9, 2007 conversation that a search of the "cross-references" files had been conducted by the Agency, but he argues that the FBI had not, in fact, conducted a search of the "cross-references" files because the FBI failed to mention any such search in its June 25, 2007 letter. Pl.'s Ren'd Opp'n at 9; cf. id. at 10 (arguing that the affidavit from the FBI's David M. Hardy did "not include the search for 'cross-references' in paragraph 9 [of his affidavit] because he is bound to a clear, chronological accounting of his [A]gency's actions under [the] FOIA"). There is no merit

to this argument. The plaintiff's conclusion that the FBI's failure to mention a search of its "cross-references" files in its June 25, 2007 letter somehow serves as an admission that the search was never conducted by the Agency is nothing more than a leap in logic that the Court refuses to take. Indeed, the FBI indicated in its letter that it had conducted a search of the Agency's "automated indices," FBI's Reply Ex. A (Revised Declaration of David M. Hardy), Ex. E (June 25, 2007 Letter From the Office of Information and Privacy to Paul Wolf, Esq.) at 1, and such a search can, in fact, encompass a review of the cross-reference files, see FBI's Reply, Hardy Decl. ¶ 12 (explaining that the automated indicies comprise of the main reference files and the cross-reference files).[6] Thus, when Ms. Lopes indicated that the FBI had conducted a search of the cross-reference files, she did not contradict any statement in the June 25, 2007 letter; rather, she was merely describing, with more specificity, the "automated indicies" search referenced in that letter.[7] Ms. Lopes's statements to the plaintiff during their August 9, 2007 call, therefore, are entirely consistent with the FBI's representations in its June 25, 2007 letter. Unable to discern even a modicum of subterfuge on the part of the FBI, the Court thus concludes that it must deny the plaintiff's motion for reconsideration of its September 23, 2008 order to dismiss his "bad faith" claim.

---

[6] Mr. Hardy submitted an initial declaration in support of the FBI's motion. See FBI's Mem. Ex. A (Declaration of David M. Hardy). His revised declaration, submitted in conjunction with the FBI's reply brief, provides more detail than his original declaration regarding the scope of the FBI's search, but otherwise the declarations are substantially identical. FBI's Reply, Hardy Decl. n.1.

[7] The plaintiff makes a similar bad-faith claim with regards to Mr. Hardy's declaration and the June 25, 2007 letter. See Pl.'s Ren'd Opp'n at 9 (referring the Court to paragraph twenty-two of Mr. Hardy's declaration, which states that "the FBI conducted a search of . . . cross references"); id. at 10 ("Both paragraph [nine] and paragraph [twenty-two] of Mr. Hardy's declaration are describing . . . the same . . . determination, yet [he] does not [mention] the search for "cross-references" in paragraph [nine] . . . ."). For the same reasons just discussed, this claim is also without merit.

II.  The Defendant's Motion for Summary Judgment

As for the FBI's renewed motion for summary judgment on the plaintiff's "inadequate search" claim, the Court need not rule on this motion before first addressing the Agency's initial motion for summary judgment.  This is because, as noted above, the Court's prior decision to deny the FBI's motion for summary judgment was vacated in Wiesner II.  See Wiesner II, ___ F. Supp. 2d. at ___, slip op. at 11.  The Court acknowledged in that decision that "[t]he suggested leads proffered by the plaintiff in his appeal letter to the FBI constituted a new search that the [A]gency had no obligation to conduct," and that the Court "erred . . . by considering the additional search terms in determining whether the FBI conducted a reasonable and adequate search."  Id., ___ F. Supp. 2d at ___, slip op. at 10; see also Kowalczyk v. Dep't of Justice, 73 F.3d 386, 388 (D.C. Cir. 1996) (analyzing the adequacy of the FBI's response to a FOIA request by "setting aside [the plaintiff's] letter of appeal" and "[f]ocusing upon [his] original . . . request").  The Court, therefore, must now re-analyze the FBI's initial motion in light of its analysis in Wiesner II.  Specifically, the Court must "disregard[] the additional leads in the plaintiff's appeal letter," Wiesner II, ___ F. Supp. 2d at ___, slip op. at 11, and "focus only on [his] original request to the [FBI], and the Agency's efforts to respond to that request, in making its determination" as to whether the FBI conducted a reasonable, adequate, and good faith search to locate responsive documents, id., ___ F. Supp. 2d at ___, slip op. at 10-11.

As the Court noted in Wiesner I, the FBI submitted a revised declaration of David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division at the FBI Headquarters Office.  Wiesner I, 577 F. Supp. 2d at 455.  Mr. Hardy explained "the record-keeping systems utilized by the FBI, and the means used to search them."  Id.  Mr. Hardy also stated that the "FBI searched both its CRS and ELSUR databases for

references to the plaintiff's name (as well as several permutations thereof), date of birth, or Social Security Number." Id. Mr. Hardy further declared that "[t]he FBI . . . searched both the main and cross reference files in the CRS for responsive files." FBI's Reply, Hardy Decl. ¶ 22. Based on Mr. Hardy's attestations, the Agency has met its burden of "demonstrat[ing] the adequacy of its search by providing a reasonably detailed affidavit, setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Wiesner I, 577 F. Supp. 2d at 455. The plaintiff, on the other hand, has not "contradicted the defendant's account of the search procedure or [proffered any] evidence of the defendant's bad faith." Moore v. Aspin, 916 F. Supp. 32, 35-36 (D.D.C. 1996) (citing Miller v. U.S. Dep't of State, 779 F.2d 1378, 1383-84 (8th Cir. 1985)). The Court, therefore, concludes that the FBI's initial motion for summary judgment on the "inadequate search" claim should have been, and is now, granted.

Lest any doubt remain about the Agency's efforts, the FBI submitted a supplemental declaration by Mr. Hardy, in which he notes that the Agency conducted a search for one of the plaintiff's additional terms, "www.dogsonacid.com," even though this search constituted a new search that the Agency was not obligated to conduct. See FBI's Ren'd Facts ¶ 13. The FBI also conducted a search for different variations of this term. See id. (describing the following variations of the website that were searched by the Agency: www.dogsonacid.com; website www.dogsonacid.com; email www.dogsonacid.com; website dogsonacide.com; email dogsonacide.com; website dogsonacid; email dogsonacid; website dogs; email dogs; dogsonacid.com; dogsonacid; and www.dogs.). These searches failed to disclose any responsive documents. Id. And, because the search of the website did not result in any responsive documents, the FBI reasonably concluded that there was no need to conduct a search of the other

9

terms, which were related to the plaintiff's use of the website.  FBI's Ren'd Mem. Ex. A (Supplemental Declaration of David M. Hardy) ¶ 8.  The FBI has exceeded its obligations to respond to the plaintiff's initial FOIA request, and it is unmistakably clear to the Court that the plaintiff is not entitled to any relief.

### III.  Conclusion

An agency that is responding to a FOIA request must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006) (internal quotation and citation omitted).  The FBI has done just that in responding to the plaintiff's FOIA request—the Agency's search was reasonably calculated to locate responsive documents, and the plaintiff's fallacious assertions do nothing to suggest otherwise.  The Court, therefore, will grant the FBI's initial motion for summary judgment and deny the plaintiff's cross-motion for reconsideration of the Court's September 23, 2008 decision.  Furthermore, in light of the Court's decision today, the Court will deny as moot the FBI's renewed motion for summary judgment.

**SO ORDERED** this 12th day of November, 2009.[8]

REGGIE B. WALTON<br>
United States District Judge

---

[8] An order will be entered contemporaneously with this memorandum opinion (1) vacating the Court's September 30, 2009 order, (2) granting the FBI's initial motion for summary judgment in full, (3) denying the plaintiff's cross-motion for reconsideration of the Court's September 23, 2008 order, and (4) denying as moot the FBI's renewed motion for summary judgment.